UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AMANDA L. SIMPSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CAROLYN W. COLVIN Acting )<br>Commissioner of the Social Security )<br>Administration, )<br>)<br>Defendant. ) | No. 1:12-cv-00962-MJD-WTL |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Amanda Simpson requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). For the reasons set forth below, the decision of the Commissioner is **REVERSED**.[1]

## I.     Procedural History

Simpson filed an application for DIB and SSI on April 25, 2008, alleging a disability onset date of October 15, 2007. Simpson's applications were denied initially on October 21, 2008, and upon reconsideration on January 14, 2009. Simpson requested a hearing, which was held on October 19, 2010 before Administrative Law Judge Tammy Whitaker ("ALJ"). The ALJ

---

[1] The parties consented to the Magistrate Judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Any objections to or appeal of this decision must be made directly to the Court of Appeals in the same manner as an appeal from any other judgment of a district court. 28 U.S.C. § 363(c)(3).

denied Simpson's applications on December 10, 2010. The Appeals Council denied Simpson's request for review on May 9, 2012, making the ALJ's decision the final decision for purposes of judicial review. Plaintiff filed her Complaint with this Court on July 13, 2012.

## II.     Factual Background and Medical History

Amanda Simpson was 39 years old at the time of the administrative hearing. She completed high school, and previously worked as a security guard, landscaper, and bricklayer. Simpson has both physical and mental impairments, suffering from degenerative disc disease, lumbosacral radiculitis, migraine headaches, major depression, and bipolar disorder.

Simpson's back problems pre-date the alleged disability onset date. She had a lumbar discectomy in December of 2006, and a lumbar laminectomy in May of 2007, both surgeries performed by Dr. Kenneth Renkens. However, Simpson continued to complain of back and hip pain, and was then diagnosed with post-laminectomy syndrome. She was prescribed epidural injections for the pain, which were administered from late 2007 to early 2008. She continued to complain of pain, and in January of 2008, a spinal MRI showed an abnormal signal at L4-L5, consistent with epidural fibrosis. Dr. Renkens then diagnosed Simpson with radiculopathy.

In March of 2008, Simpson was seen at Meridian Services for complaints of worsening depression. The social worker there, Debora Tice, diagnosed Simpson with major depression and gave her a Global Assessment of Functioning ("GAF") score of 50, indicating serious symptoms or serious impairment in social or occupational functioning.

In September of 2008, Dr. Bilal Khan performed a consultative examination, at the request of the Indiana Disability Determination Bureau ("DDB"), and opined that Simpson was severely disabled due to back pain. In October of 2008, Dr. M. Ruiz of the DDB completed a Residual Functional Capacity ("RFC") assessment regarding Simpson's physical limitations. Dr.

Ruiz concluded that Simpson could lift 20 pounds occasionally and 10 pounds frequently; could stand or walk for six hours in an eight hour workday; could sit for the same amount of time; could balance, kneel, and crouch frequently; could climb ramps and stairs, stoop and crawl occasionally; and could never climb ladders, ropes, or scaffolds.

Also in October of 2008, the DDB's Dr. Stacia Hill completed a mental RFC, determining that Simpson had major depression, and assigned moderate limitation in Simpson's ability to maintain concentration, persistence, or pace.

Starting in January of 2009, Simpson complained of daily headaches, and from the end of that month to July 14, 2010, Simpson sought emergency treatment for headache pain. Dr. Blankenship, a neurologist, concluded that the headaches were likely caused by Simpson's pain medications, and that they would cause her to be absent from work two days a month.

In October of 2009, Simpson sought treatment at the Center for Pain Management, where Dr. Edward Kowlowitz recommended a trial of a spinal cord stimulator, which Simpson was given on December 3, 2009.

In the meantime, Dr. Hillman of Meridian Services diagnosed Simpson with Bipolar disorder, and again assigned her a GAF of 50. In August of 2010, Simpson was involuntarily admitted at Ball Memorial Hospital for suicidal ideation.

On August 19, 2010, Terri Helbing, Simpson's therapist, and Dr. S. Khan jointly provided a mental RFC, in which they indicated that Simpson would need to miss work more than four days per month. On August 27, 2010, Dr. Mathison completed a physical RFC, in which he indicated that Simpson's pain constantly interferes with her attention and concentration; that she can sit, stand, and walk for only two hours out of an eight hour workday; that she can rarely lift less than ten pounds and never lift more than ten pounds; that she can

3

rarely crouch, squat, or climb stairs; and that she can never twist, stoop, or climb ladders. Dr. Mathison further opined that Simpson could not sustain gainful employment because of an inability to focus, due to chronic pain.

### III.     Applicable Standard

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423.[2] Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expectd to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity ("SGA") she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt.404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d).

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

## IV.   The ALJ's Decision

The ALJ first determined that Simpson met the insured status requirements of the Social Security Act through September 30, 2011. Applying the five-step analysis, the ALJ found at step one that Simpson had not engaged in substantial gainful activity since the alleged onset date of October 15, 2007. At step two, the ALJ found that Simpson had the following severe impairments: degenerative disc disease, lumbosacral radiculitis, obesity, plantar fasciitis, migraine headaches, major depression, bipolar disorder, and cannabis abuse.

At step three, the ALJ determined that Simpson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ evaluated Simpson's obesity using the criteria of Listings 1.00Q, 3.00I, and 4.00I and determined that there was no evidence that Simpson's obesity was of listing-level severity. The ALJ evaluated Simpson's back impairment using the criteria of Listing 1.04 and determined that Simpson lacked the significant and persistent neurological abnormalities required by that listing. The ALJ evaluated Simpson's plantar fasciitis using the criteria of Listing 1.02 and determined that Simpson lacked the gross anatomical deformity, chronic joint pain, stiffness, and limitation of motion required by the listing. The ALJ evaluated Simpson's migraine headaches using the criteria of Listing 11.03 and determined that there was no evidence of alteration of awareness with significant interference with activity.

Regarding Simpson's mental impairments, the ALJ determined that the impairments, alone or in combination, did not meet or medically equal the criteria of Listings 12.04 or 12.09. Specifically, the ALJ considered whether the "paragraph B and C" criteria were satisfied. To satisfy "paragraph B," the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. The ALJ determined that Simpson had mild restriction in her activities of daily living; moderate difficulties in social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no extended episodes of decompensation. Thus, the ALJ determined that Simpson's mental impairments did not meet the "paragraph B" criteria. Evaluating Simpson's mental impairments under the

"paragraph C" criteria, the ALJ found that, in addition to no episodes of decompensation of extended duration, a minimal adjustment in her environment would not cause Simpson to decompensate, and there was no evidence that Simpson is unable to function outside a highly supportive living arrangement. Therefore, the ALJ determined that Simpson's mental impairments did not meet the "paragraph C" criteria.

The ALJ found that the claimant has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except as follows: Simpson must be allowed to sit or stand alternatively, and must be allowed to stand or walk for five to seven minutes before sitting back down; Simpson cannot twist, crouch, kneel, crawl, reach overhead, or climb ladders, ropes, scaffolds, or stairs; she can never stoop below the waist, and can never stoop repetitively; Simpson must not be exposed to very loud noise, vibration, or hazards such as unprotected heights, dangerous machinery, and slippery or uneven walking surfaces; she is limited to simple, routine, and repetitive tasks, and can make only simple work-related decisions; she must be able to be absent once per month.

At step four, the ALJ determined that Simpson is unable to perform any of her past relevant work. At step five, the ALJ determined that, considering Simpson's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Simpson could perform. Therefore, the ALJ determined that Simpson is not disabled.

## V.     Discussion

The central issue in this matter is whether there is substantial evidence to support the ALJ's determination that Simpson is not disabled. Simpson raises two arguments as to why this Court should reverse the decision of the ALJ: 1) the ALJ erred in failing to grant controlling

weight to any treating physician, and 2) the ALJ erred in failing to consult a medical expert regarding the equaling or meeting of a Listing regarding Simpson's headaches.

### A. Substantial Evidence Does Not Support the ALJ's Decision Not to Grant Controlling Weight to the Treating Physicians

The ALJ did not grant controlling weight to Dr. Mathison's RFC, Dr. Blankenship's opinion, or Dr. Khan's mental RFC. This, in itself, is not error if those opinions are not supported by substantial evidence. 20 C.F.R. § 404.1527(c)(2); *See Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006). However, Simpson argues that the ALJ failed to articulate an acceptable rationale for not granting controlling weight to the treating physicians. This Court agrees. In this case, the ALJ stated that she granted each of these treating physicians' opinions "little weight," after determining that they were not supported by the record evidence, and/or inconsistent with Simpson's level of activities. [R. at 26, 29.] This statement is insufficient. "The ALJ is not required to address every piece of evidence or testimony presented, but must provide a "logical bridge" between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The ALJ does not explain why the treating physicians' opinions were not supported by the record evidence, or were inconsistent with Simpson's level of activities, and thus does not build the required logical bridge. "The ALJ did not provide any explanation for [her] belief that [Simpson's] activities were inconsistent with [the treating physicians'] opinion[s] and [her] failure to do so constitutes error." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

Further, the ALJ's bare statement that each treating physician's opinion is not supported by the record evidence is itself unavailing. In fact, all of the doctors' opinions are consistent with one another in their assessments of Simpson's limitations, except Dr. Ruiz who never examined Simpson. It is Dr. Ruiz' opinion which is inconsistent with the others, and therefore,

8

substantial evidence does not support the ALJ's decision to credit Dr. Ruiz' opinion over the others'.

The ALJ relied heavily on Simpson's level of activities as support that Dr. Ruiz' had the most accurate assessment. However, the Seventh Circuit has cautioned that inordinate weight should not be placed on a claimant's ability to complete household tasks. *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (citations omitted). In so doing, the Seventh Circuit recognized that "[t]he pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work." *Id*. at 362. In this case, the ALJ has not pointed to substantial evidence to conclude that Simpson's level of activity is inconsistent with disability. Simpson is on the Daleville Town Council, but that involves attending a single one-hour meeting per month – hardly the sort of exertion required to hold down a job. Simpson also attends her son's basketball games and golf tournaments, as well as her Goddaughter's annual horse show. Again, these are not activities which are inconsistent with disability. Simpson also drives her son to school each day, and does some chores in her home. But as the Seventh Circuit noted in *Mendez*, these sorts of activities simply do not have the same pressures as those present in the workplace, and are thus not inconsistent with disability.

The ALJ also points to the fact that Simpson returned to working as a bricklayer from around May 14, 2009 to sometime before October 2009 [R. at 790, 845-46.] However, the ALJ neither characterizes this work as SGA nor as an unsuccessful work attempt. In the absence of further evidence in the record of either how long it lasted, or why it was terminated, this Court is unable to determine whether this work was an unsuccessful work attempt. This was error on the ALJ's part, as, "at a minimum, the ALJ should have inquired at the administrative hearing as to

9

when and why [the plaintiff's job] ended." *Cheney v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 51734 (D. Vt.). If this was an unsuccessful work attempt, as seems quite possible to this Court, especially in light of the fact that the ALJ did not characterize it as SGA, then the ALJ should have disregarded it in her evaluation of disability, instead of using it as evidence that "the claimant has shown during the alleged period of disability that she had the ability to work." [R. at 28.] Indeed, to credit the ALJ's statement in this regard would be to discourage other potential claimants from attempting to work, or testing their ability to work, which this Court will not do.

### B. Substantial Evidence Does Not Support the ALJ's Decision Not to Obtain an Updated Medical Opinion

In determining that Simpson's migraine headaches did not meet or equal a Listing, the ALJ considered Listing 11.03 in particular. 20 C.F.R. pt.404, subpt. P, App. 1. [R. at 22.] Simpson argues that the ALJ erred by failing to obtain an updated medical opinion on the issue, because Simpson did not begin seeking emergency medical treatment for migraines until 2009, after the DDB physicians had made their evaluation. The ALJ is required to obtain an updated opinion "when additional medical evidence is received that in the opinion of the [ALJ] may change the State agency's medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p; *Buckhannon ex rel J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010).

Here, state agency doctors Ruiz and Khan had completed their assessments before Simpson began seeking treatment for migraine headaches. [R. at 721-28.] Starting in January of 2009, Simpson sought treatment for her headaches in an emergency room on at least twelve different occasions in a year and a half. [R. at 943-45, 932-35, 912-14, 905-08, 901-04, 894-98, 889-893, 884-88, 880-83, 1117-1120, 1111-14, 1107-1110.] In light of such severe and frequent symptoms, substantial evidence does not support the ALJ's decision not to obtain an updated

10

medical opinion. Thus, this Court concludes that the ALJ's consideration of whether Simpson's impairments met or equaled a Listing was incomplete and requires remand. On remand, the ALJ is required to obtain an updated medical opinion on whether Simpson's combined impairments meet or equal a Listing.

## VI.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is **REVERSED** and this matter is **REMANDED** for further consideration in light of this decision.

Date:  7/31/2013

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com

Timothy E. Burns
KELLER & KELLER
timb@2keller.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov